# Exhibit 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH PEERY, on behalf of himself and all persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-589 |
| v. | ) ) | Judge Sharon J. Coleman |
| CHICAGO HOUSING AUTHORITY, | ) ) | |
| Defendant. | ) ) | |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES

Plaintiff, by his counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby serves upon defendant the Chicago Housing Authority this first set of interrogatories, to be answered in writing and delivered to the offices of counsel of record by October 10, 2013.

### DEFINITIONS AND INSTRUCTIONS

1.      As used in this discovery request, and as necessary to bring within its scope any information which otherwise might be outside of its scope:

      (a)      The singular form of a word shall be interpreted to include the plural, and the plural to include singular.

      (b)      "And" shall be interpreted to include "or," and "or" to include "and."

      (c)      "Including" shall be interpreted as "including but not limited to."

      (d)      Defendant shall mean the Chicago Housing Authority.

2.      In responding to this discovery request, please furnish all available information, including information in the possession of defendant's subordinates, attorneys, or anyone acting under defendants' direction or control.

3. With respect to any information that defendant withholds on a claim of privilege, please provide a statement setting forth:

(a) a brief description of the nature and subject matter of the information; and

(b) the statute, rule, or decision which is claimed to give rise to the privilege.

## INTERROGATORIES

1. Please state each and every government interest that defendant asserts in this litigation is advanced by suspicionless drug testing of public housing residents in mixed-income housing developments.

2. Please state each and every fact on which defendant relies in this litigation in asserting the existence of the government interests identified in Interrogatory 1, including the identity of any supporting documents or persons with knowledge.

3. Please state each and every fact on which defendant relies in this litigation in asserting that the government's interests identified in Interrogatory 1 are advanced by such drug testing, including the identity of any supporting documents or persons with knowledge.

4. Please state each and every defense that defendant asserts in this litigation, other than the asserted advancement of government interests addressed by Interrogatories 1 through 3.

5. Please state each and every fact on which defendant relies in this litigation in asserting the defenses identified in Interrogatory 4, including the identity of any supporting documents or persons with knowledge.

6. Please state each and every fact concerning the pending motion for class certification that defendant disputes.

7. Please state each and every basis on which defendant relies in this litigation in disputing the facts identified in Interrogatory 6.

2

DATED:  September 10, 2013

Respectfully submitted,

_One of the Plaintiff's Attorneys_

HARVEY GROSSMAN
ADAM SCHWARTZ
KAREN SHELEY
Roger Baldwin Foundation of ACLU, Inc.
180 North Michigan Avenue, Suite 2300
Chicago, Illinois 60601
(312) 201-9740

3

## CERTIFICATE OF SERVICE

I, Adam Schwartz, an attorney, hereby certify upon oath, I served to the counsel of record listed below a true and correct copy of **PLAINTIFF'S FIRST SET OF INTERROGATORIES** via messenger and email on September 10, 2013.

Samuel Mendenhall
Kimball Anderson
Elizabeth Papez
WINSTON & STRAWN
35 West Wacker Drive
Chicago IL 60601
smendenhall@winston.com
kanderson@winston.com
epapez@winston.com

Adam Schwartz

# Exhibit 2

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSEPH PEERY, on behalf of himself and all persons similarly situated, | |
| Plaintiffs, | **Case No.: 13-cv-5819** |
| v. | **The Hon. Sharon Johnson Coleman** |
| CHICAGO HOUSING AUTHORITY, | |
| Defendant. | |

**CHICAGO HOUSING AUTHORITY'S ANSWERS
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Defendant Chicago Housing Authority ("CHA") responds to Plaintiff Joseph Peery's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

Each of these objections is applicable to each of Mr. Peery's Interrogatories and is incorporated into each and every one of CHA's responses as though fully set forth therein, and is in addition to any specific objections stated for a particular interrogatory.

1.      CHA reiterates and preserves its objection to answering these interrogatories at this very early stage in the litigation pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure on the grounds that discovery has not even begun (with the exception of the Court granting limited interrogatories to Plaintiff), and no pretrial conference has been held. CHA cannot adequately and properly answer these contention interrogatories until later in this litigation when it has the benefit of the Court's ruling on its motion to dismiss Plaintiff's complaint, and, if the complaint survives, has formulated its answers to the allegations and been allowed to conduct discovery. Rule 33(a)(2) of the Federal Rules of Civil Procedure expressly

allows the Court to order that contention interrogatories "need not be answered until designated discovery is complete, or until a pretrial conference or some other time."

2.      CHA objects to these interrogatories on the grounds that they are overly broad, unduly burdensome, and beyond the scope of permissible contention interrogatories.

3.      CHA objects to these interrogatories on the grounds that the term "government interest" is vague and undefined throughout the interrogatories.

4.      CHA objects to these interrogatories to the extent that they seek information or documentation protected by the attorney-client privilege, the attorney work-product immunity, and/or any other applicable privilege or immunity.

5.      CHA objects to these interrogatories to the extent they seek information: (a) not reasonably calculated to lead to the discovery of admissible evidence; (b) which is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive; or (c) which Mr. Peery has had opportunity to obtain from other sources.

6.      CHA objects to these interrogatories to the extent that they call for legal conclusions.

7.      CHA objects to the production of information and documents that are in the public domain and, therefore, are equally accessible to Mr. Peery.

## **INTERROGATORIES**

1.      Please state each and every government interest that defendant asserts in this litigation is advanced by suspicionless drug testing of public housing residents in mixed-income housing developments.

**ANSWER:**      CHA objects to this interrogatory on the ground that it is argumentative in that it assumes that a "government interest" and, hence, "governmental conduct" or "governmental action," is involved in this litigation. As stated in CHA's motion to dismiss, the drug testing that

2

Plaintiff complains of is imposed by a private landlord, Holsten Management Company ("HMC"), and is found in a provision of Plaintiff's lease with HMC. CHA is not a party to this lease and the complained-of testing does not involve any "government action." CHA also objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Further, CHA objects to this interrogatory to the extent it suggests that the challenged testing policy does not apply to all tenants, whether or not they receive CHA assistance, and to the extent its characterization of certain tenants as "public housing residents" implies legal conclusions about the nature of their tenancy or relationship to CHA. Subject to and without waiving these objections, CHA states that if the testing at issue were found to involve "governmental action," the "special needs" the policy advances include: (1) public safety at Parkside, given the history of safety problems in the surrounding community; (2) promotion of a drug-free Parkside, given the history of drug problems in the surrounding community; (3) protection of the youth residing at Parkside, given the history of harm to youth in the surrounding community; and (4) the special and compelling social, economic, and community development goals served by the historic and unprecedented transformation of Cabrini Green as part of an initiative in which CHA acquiesced in the private developers and resident desires for drug screening in order to promote investment in and acceptance of Parkside, a mixed-income community that provides CHA beneficiaries with the choice of applying their benefits to live in a diverse community that offers a variety of new housing and other amenities.

2. Please state each and every fact on which defendant relies in this litigation in asserting the existence of the government interests identified in Interrogatory 1, including the identity of any supporting documents or persons with knowledge.

3

**ANSWER:**    CHA objects to this interrogatory on the ground that it is argumentative in that it assumes a "government interest" and, hence, "governmental conduct" or "governmental action" is involved in this litigation. As stated in CHA's motion to dismiss, the drug testing that Plaintiff complains of is imposed by a private landlord, Holsten Management Company ("HMC"), and is found in a provision of Plaintiff's lease with HMC. CHA is not a party to this lease, and the complained-of testing does not involve any "government action." Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. CHA also objects to this interrogatory in that CHA is not yet required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted, or Plaintiffs may be required to replead in an amended complaint. As such, CHA has not yet decided on which facts it intends to rely in this litigation. Lastly, CHA objects to this interrogatory because it seeks or implies legal conclusions. Subject to and without waiving these objections, CHA states that if the testing at issue were found to involve "governmental action," CHA would rely on any admissible or otherwise judicially cognizable facts or evidence regarding (1) the history of safety problems in the surrounding community; (2) the history of drug problems in the surrounding community; (3) the history of harm to youth in the surrounding community; (4) developer and resident demand for tenants who receive CHA benefits to abide by generally-applicable tenancy requirements, including drug screening, as a condition of investing in Parkside; and (5) CHA and public interest in partnering with or encouraging private developers to invest in Parkside that will provide interested CHA beneficiaries with housing choices that allow them to integrate into a mixed-income housing community with a more diverse range of tenants and amenities than were available at Cabrini Green or are available at traditional public housing communities. Persons with knowledge

4

include, but are not limited to, current and former residents at Cabrini Green, current and former residents of Parkside, social service agencies, HMC, Cabrini-Green Local Advisory Council Community Development Corporation, CHA, and local business owners.

3.     Please state each and every fact on which defendant relies in this litigation in asserting that the government's interests identified in Interrogatory 1 are advanced by such drug testing, including the identity of any supporting documents or persons with knowledge.

**ANSWER:**     CHA objects to this interrogatory on the ground that it is argumentative in that it assumes a "government interest" and, hence, "governmental conduct" or "governmental action" is involved in this litigation. As stated in CHA's motion to dismiss, the drug testing that Plaintiff complains of is imposed by a private landlord, Holsten Management Company ("HMC"), and is found in a provision of Plaintiff's lease with HMC. CHA is not a party to this lease, and the complained-of testing does not involve any "government action." Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Moreover, CHA objects to this interrogatory in that CHA has not yet been required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted, or Plaintiffs could be required to replead in an amended complaint. As such, CHA has not yet decided on which facts it intends to rely in this litigation. Lastly, CHA objects to this interrogatory because it seeks a legal conclusion. Subject to and without waiving these objections, CHA states that if the testing at issue were found to involve "governmental action," CHA would rely on any admissible or otherwise judicially cognizable facts or evidence regarding (1) the history of safety problems in the surrounding community; (2) the history of drug problems in the surrounding community; (3) the history of harm to youth in the surrounding community; (4) the lack of drug-related issues at Parkside as compared to the surrounding community before Parkside; (5) developer and resident

5

demand for tenants who receive CHA benefits to abide by generally-applicable tenancy requirements, including drug screening, as a condition of investing in Parkside; and (6) CHA and public interest in partnering with or encouraging private developers to invest in Parkside in order to provide interested CHA beneficiaries with housing choices that allow them to integrate into a mixed-income housing community with a more diverse range of tenants and amenities than were available at Cabrini Green or are available at traditional public housing communities. Persons with knowledge include, but are not limited to, current and former residents at Cabrini Green, current and former residents at Parkside, social service agencies, HMC, Cabrini-Green Local Advisory Council Community Development Corporation, CHA, and local business owners.

4. Please state each and every defense that defendant asserts in this litigation, other than the asserted advancement of government interests addressed by Interrogatories 1 through 3.

**ANSWER:** CHA objects to this interrogatory on the ground that it is overbroad. Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Moreover, CHA objects to this interrogatory in that CHA has not yet been required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted, or Plaintiffs could be required to replead in an amended complaint. As such, CHA has not yet decided on which defenses it intends to rely in this litigation. Lastly, CHA objects to this interrogatory to the extent it seeks legal conclusions. Subject to and without waiving these objections, CHA may assert defenses, including, but not limited to, lack of standing, ripeness, waiver, laches, estoppel, lack of government action, special needs, and reasonable circumstances.

5. Please state each and every fact on which defendant relies in this litigation in asserting the defenses identified in Interrogatory 4, including the identity of any supporting documents or persons with knowledge.

**ANSWER:** CHA objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Moreover, CHA objects to this interrogatory in that CHA has not yet been required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted, or Plaintiffs could be required to replead in an amended complaint. As such, CHA has not yet decided on which defenses it intends to rely in this litigation. Lastly, CHA objects to this interrogatory to the extent it seeks legal conclusions. Subject to and without waiving these objections, CHA states it may rely on any facts or admissible or otherwise judicially cognizable evidence relevant to the defenses CHA timely asserts in this litigation, including, but not limited to, lack of standing, ripeness, waiver, laches, estoppel, lack of government action, special needs, and reasonable circumstances. Such facts and evidence would include, but would not be limited to, facts and evidence of Mr. Peery's personal experience with the challenged testing policy, facts and evidence regarding the scope and manner of the testing policy's application and administration, facts and evidence concerning tenants' notice of and consent to the testing, facts and evidence concerning CHA, resident, and private developer involvement in requesting, reviewing or approving the testing policy, facts and evidence concerning HMC's adoption of the testing policy, facts and evidence concerning the relationship between the testing policy and resident and developer requests or support for the policy, and facts and evidence concerning special public safety or community development concerns or goals in the Cabrini Green or Parkside communities and surrounding neighborhoods.

6. Please state each and every fact concerning the pending motion for class certification that defendant disputes.

**ANSWER:** CHA objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Moreover, CHA objects to this interrogatory in that CHA has not yet been required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted. As such, CHA has not yet decided on its strategy for responding to a motion for class certification. Lastly, CHA objects to this interrogatory to the extent it seeks legal conclusions. Subject to and without waiving these objections, CHA disputes all of Mr. Peery's asserted bases for class certification.

7. Please state each and every basis on which defendant relies in this litigation in disputing the facts identified in Interrogatory 6.

**ANSWER:** CHA objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Further, CHA objects to this interrogatory on the grounds that it seeks information protected by the attorney-client privilege and attorney work product doctrine. Moreover, CHA objects to this interrogatory in that CHA has not yet been required to file an answer in this litigation, given that its motion to dismiss is still pending. Its motion to dismiss may be granted. As such, CHA has not yet decided on its strategy for responding to a motion for class certification. Lastly, CHA objects to this interrogatory to the extent it seeks legal conclusions. Subject to and without waiving these objections, CHA states that it may rely on any admissible or otherwise judicially cognizable facts or evidence regarding Mr. Peery's ability fairly and adequately to represent the interests of the purported class, whether his claims are typical of the purported class members, and whether his claims raise questions of law and fact are not common to the purported class.

8

Dated: October 25, 2013

Respectfully submitted,

CHICAGO HOUSING AUTHORITY

By: _____
One of its Attorneys

Samuel Mendenhall #6207315
Kimball R. Anderson #49980
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
smendenhall@winston.com
Attorneys for Defendant
Chicago Housing Authority

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2013, I caused to be served a true copy of Chicago Housing Authority's Answers to Plaintiff's First Set of Interrogatories by email to:

Adam D. Schwartz – aschwartz@aclu-il.org

_____

Samuel Mendenhall

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH PEERY, on behalf of himself and all persons similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-05819 |
| v. | ) ) | Judge Sharon J. Coleman |
| CHICAGO HOUSING AUTHORITY and HOLSTEN MANAGEMENT CORPORATION, | ) ) ) ) | Magistrate Judge Arlander Keys |
| Defendants. | ) | |

## PLAINTIFF'S SECOND SET OF INTERROGATORIES TO CHA

Plaintiff, by his counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby serves upon defendant the Chicago Housing Authority this second set of interrogatories, to be answered in writing and delivered to the offices of counsel of record by January 21, 2014.

## DEFINITIONS AND INSTRUCTIONS

1.      As used in this discovery request, and as necessary to bring within its scope any information which otherwise might be outside of its scope:

   (a)    The singular form of a word shall be interpreted to include the plural, and the plural to include singular.

   (b)    "And" shall be interpreted to include "or," and "or" to include "and."

   (c)    "Including" shall be interpreted as "including but not limited to."

   (d)    "Plaintiff" shall mean Joseph Peery.

   (e)    "Defendant" shall mean the Chicago Housing Authority and Holsten Management Corporation.

   (f)    "CHA" shall mean the Chicago Housing Authority.

(g)     "HMC" shall mean Holsten Management Corporation.

(h)     "Mixed-income development" shall mean (in the words of the CHA's "Plan Forward" report at page 30) a mixed-finance housing development that includes a combination of public housing and non-public housing units.  As used herein, this term is limited to mixed-income developments within the City of Chicago.

(i)     "Parkside" shall mean the mixed-income development known as Parkside of Old Town and located at 437 West Division Street.

(j)     "Drug testing" shall mean suspicionless drug testing of adults as a condition of admission or continued occupancy at certain mixed-income developments.

(k)     "Working group" shall mean (in the words of the CHA's "Moving to Work Annual Report" for FY 2008 at page 6) a group with "[t]he purpose . . . to combine and implement both the ideas and goals of several stakeholders into the revitalization of Chicago's public housing."  As used herein, each mixed-income development has a working group.

(l)     "Document" has the broadest possible meaning under Rule 34, and includes written or graphic matter of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, and all electronically stored information and tangible things, including all writings, papers, e-mails, handwritten notes, calendar pads, appointment books, note pads, letters, memoranda, telegrams, intra-agency communications of any kind, financial statements, work papers, records, ledgers, minutes, correspondence, contracts, studies, charts, graphs, data sheets, bulletins, speeches, press releases, circulars, pamphlets, notices, statements, maps, surveys, microfilm, tape and disk

2

recordings, audio tape, video tape, computer records of any kind, videotape, periodicals, transcripts, pleadings, affidavits, and other tangible communications, wherever located.  If a document has been prepared in several copies, or additional copies have been made, and the copies are not identical, whether by reason of subsequent modifications of the copy, by addition of notations or otherwise, each non-identical copy is a separate "document."

2.     In responding to this discovery request, please furnish all available information, including information in the possession of defendant's subordinates, attorneys, or anyone acting under defendant's direction or control.

3.     With respect to any information that defendant withholds on a claim of privilege, please provide a statement setting forth:

(a)     a brief description of the nature and subject matter of the information; and

(b)     the statute, rule, or decision which is claimed to give rise to the privilege.

## **INTERROGATORIES**

## I.     **The mixed-income developments**

1.     Please identify each and every mixed-income development, and for each such development, please state:

(a)     When people started living in the development.

(b)     The number of people who live in the development:

(i)     in total;

(ii)     in units owned by an occupant;

(iii)     in units rented by an occupant at market price;

(iv)     in rental units reserved for CHA renters; and

3

           (v)      in other units rented below market price.

       (c)      Any and all of the development's developers.

       (d)      Any and all of the development's owners.

       (e)      Any and all of the development's managers.

       (f)      Whether the CHA has adopted a resolution regarding drug testing of any residents, and if so, when the CHA adopted this resolution.

       (g)      Whether the development manager conducts drug testing of any residents, and if so, when the development manager began doing so.

## II.    <u>The CHA's role</u>

2.    For each and every working group at each and every mixed-income development with drug testing, please:

       (a)      Describe the goals and functions of the working group.

       (b)      State all members of the working group.

       (c)      State all occasions when the working group took any action, including making any recommendation to the CHA board, that was opposed by the CHA representative to the working group.

3.    For each and every mixed-income development with drug testing, please state with specificity the role of the CHA in:

       (a)      Creating the working group.

       (b)      Selecting the developer.

       (c)      Creating the redevelopment plan.

       (d)      Obtaining HUD approval.

       (e)      Spending the CHA's own funds.

(f)     Securing other funds and financing.

(g)     Demolishing old buildings.

(h)     Helping displaced tenants relocate.

(i)     Improving infrastructure, such as utilities, streets, and parks.

(j)     Completing real estate transactions.

(k)     Approving the new residences as fit for occupancy.

(l)     Referring the developers to displaced CHA tenants who want to live in the new development.

(m)     Owning the land below the development.

(n)     Ensuring that the development is operated in compliance with applicable federal laws.

(o)     Creating site-specific tenant selection criteria for the development.

(p)     Any and all other aspects of the development.

4.     Please state each and every fact, including the identity of any supporting documents or persons with knowledge, relating or referring to the CHA's contention:

(a)     That "CHA acquiesced in the private developers and resident desires for drug screening in order to promote investment in and acceptance of Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

(b)     That "the Cabrini Green Local Advisory Development Corporation, which is the resident owned development corporation, approved this requirement [*i.e.*, drug testing]." *See* transcript of proceedings of November 4, 2013, at page 10, lines 11-14.

## III.     The drug testing

5.     For each mixed-income development with drug testing, please state with

5

specificity all drug testing protocols, including:

 (a)  Where the specimen is gathered, and by whom.

 (b)  Where the specimen is analyzed, and by whom.

 (c)  What drugs are subject to testing.

 (d)  All persons notified of a positive result.

 (e)  All consequences of a positive result.

 (f)  All measures to ensure confidentiality of the tested persons.

 (g)  All protocols for people at risk of false positives due to their use of lawful medicine, including: whether such people must disclose their use of such medicine; and if so: to whom they disclose it; how it is disclosed; how that information is used; and how that information is confidentially maintained.

 (h)  Notice to the CHA of any aspect of the manner that drug testing was conducted, including: objections to drug testing by persons subject to drug testing; the results of drug testing; and what happens to persons who test positive.

6.  The CHA's FY 2011 Admissions and Continued Occupancy Policy states (at Part II-F-3-a-iii on pages 23 and 24) that "[a]pplicants who do not meet the site-specific criteria . . . [w]ill have their name removed from the CHA community-wide wait list if failure to meet the site-specific criteria was based on negative results to the site's drug-test requirement[.]" Regarding this policy, please state:

 (a)  What is the result of being removed from the community-wide wait list?

 (b)  Does this policy apply to applicants to mixed-income developments who

refuse to take a drug test?

    (c)    Does this policy apply to current residents of mixed-income developments seeking continued occupancy who fail a drug test?

    (d)    Does this policy apply to current residents of mixed-income developments seeking continued occupancy who refuse to take a drug test?

7.    Please state, for each year at each mixed-income development with drug testing:

    (a)    The number of adult applicants to CHA apartments who were drug tested as a condition of admission.

    (b)    The number of such persons who tested positive.

    (c)    The number of adult residents of CHA apartments who were drug tested as a condition of continued occupancy.

    (d)    The number of such persons who tested positive.

## IV.    Reasons for the drug testing

8.    Please state each and every fact, including the identity of any supporting documents or persons with knowledge, relating or referring to the CHA's contention that "special needs" advanced by the drug testing include:

    (a)    "[P]ublic safety at Parkside, given the history of safety problems in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

    (b)    "[P]romotion of a drug-free Parkside, given the history of drug problems in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

    (c)    "[P]rotection of the youth residing at Parkside, given the history of harm

to youth in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

(d) "[T]he special and compelling social, economic, and community development goals served by the historic and unprecedented transformation of Cabrini Green[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

9. Please state each and every fact, including the identity of any supporting documents or persons with knowledge, relating or referring to the CHA's contention that:

(a) There is "developer and resident demand for tenants who receive CHA benefits to abide by generally-applicable tenancy requirements, including drug screening, as a condition of investing in Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 4.

(b) There is a "lack of drug-related issues at Parkside as compared to the surrounding community before Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 5.

(c) Drug testing has advanced a "lack of drug-related issues at Parkside as compared to the surrounding community before Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 5.

10. If the CHA contends that drug testing at mixed-income developments advances any special needs or interests beyond those identified in paragraphs 8 and 9 above, please state each and every one of those special needs or interests.

8

11.    Please state each and every additional fact, including the identity of any supporting documents or persons with knowledge, beyond those responsive to requests 8 through 10 above, that relates or refers to the existence of any special need for drug testing at the mixed-income developments, or shows that drug testing advances any special need.

12.    Please identify all public housing authorities known to the CHA that require drug testing as a condition of admission or continued occupancy.

13.    Please identify all private residential landlords known to the CHA that require drug testing as a condition of admission or continued occupancy in rental property.

14.    Please state why, at mixed-income developments with drug testing, apartment owners are exempt from the drug testing.

15.    Please state whether the CHA asserts that CHA renters at mixed-income housing developments are more likely to use drugs than apartment owners in the same development.

DATED:  December 20, 2013

Respectfully submitted,

One of the Plaintiff's Attorneys

RICHARD J. O'BRIEN
ERIC T. SCHMITT
Sidley Austin LLP
One South Dearborn St.
Chicago, IL 60603
(312) 853-7000

ADAM SCHWARTZ
HARVEY GROSSMAN
KAREN SHELEY
LINDSAY MILLER
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave. Suite 2300
Chicago, IL 60601
(312) 201-9740

9

## CERTIFICATE OF SERVICE

I, Adam Schwartz, an attorney, hereby certify upon oath, I served to the counsel of record listed below a true and correct copy of **PLAINTIFF'S SECOND SET OF INTERROGATORIES TO CHA** via U.S. Mail and email on December 20, 2013.

Samuel Mendenhall
Kimball Anderson
WINSTON & STRAWN
35 West Wacker Drive
Chicago IL 60601
smendenhall@winston.com
kanderson@winston.com

Elizabeth Papez
WINSTON & STRAWN
1700 K Street, NW
Washington, DC 20006
epapez@winston.com

Thomas E. Johnson
JOHNSON JONES SNELLING GILBERT & DAVIS
36 South Wabash Avenue, Suite 1310
Chicago, IL 60603
tjohnson@jjsgd.com

Samantha Liskow
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
samantha@loevy.com

Stephanie Jones
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street Suite 3600
Chicago, IL 60603
sjones@fslegal.com

Adam Schwartz

# Exhibit 4

**Kaitlin Towner**

| | |
|---|---|
| **From:** | Mendenhall, Samuel <SMendenh@winston.com> |
| **Sent:** | Tuesday, January 07, 2014 5:57 PM |
| **To:** | Adam Schwartz |
| **Subject:** | Peery v. CHA:  Plaintiff's Second Set of Interrogatories to CHA |

Adam,

Good evening.  I am writing you with respect to Plaintiff's Second Set of Interrogatories to CHA.  As you are aware, Rule 33(a)(1) of the Federal Rules of Civil Procedure provides, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party **no more than 25 written interrogatories, including all discrete subparts**." (emphasis added).  On September 10, 2013, Plaintiff served Plaintiff's First Set of Interrogatories to CHA.  This set contained seven (7) interrogatories which the CHA answered in full.  Plaintiff's second set of interrogatories contains 62 interrogatories, including discrete subparts.  This brings the total interrogatories, including discrete subparts, served to date by Plaintiff on CHA to 69.  This far exceeds the 25 allowed under the rules.  As such, I am writing to inform you that CHA will answer the first 18 interrogatories, including subparts, which when added to the seven CHA previously answered, equals the maximum allowed under the rules.  If you would like for CHA to answer a different set of 18 interrogatories from the 62 Plaintiff served in the second set, please advise me of the same.

Thank you.

**Samuel Mendenhall**
**Partner**
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
D: +1 (312) 558-5755
F: +1 (312) 558-5700
Bio | VCard | Email | www.winston.com

WINSTON
& STRAWN
LLP

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
********************************************************************************* Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# Exhibit 5

**Kaitlin Towner**

| | |
|---|---|
| **From:** | Adam Schwartz |
| **Sent:** | Thursday, January 09, 2014 1:51 PM |
| **To:** | Mendenhall, Samuel |
| **Cc:** | Adam Schwartz |
| **Subject:** | RE: Peery v. CHA: Plaintiff's Second Set of Interrogatories to CHA |

Dear Sam:

Thank you for your email of January 7, 2014, regarding Mr. Peery's second set of interrogatories to the CHA, which we served on December 20, 2013.

Mr. Peery does not agree with your suggestion that this discovery request contains 62 separate interrogatories. I gather that you arrived at this figure by counting every sub-part and sub-sub-part as a separate interrogatory. However, the better view of Rule 33(a)(1) is that "interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question." *Bell v. Woodward Co.*, 2005 WL 3829134, *1 (N.D. Ill. 2005) (Mahoney, M.J.), citing Moore's at sec. 33.30[2]. See also *Imbody v. C&R Corp.*, 2010 WL 567317, *1 (N.D. Ind. 2010) ("if the subparts are directed at eliciting details concerning a common theme, the subparts should be counted together as one interrogatory"), citing Wright and Miller at sec. 2168.1. Thus, for example, interrogatory number 1 should count as only four interrogatories, and not (as you apparently suggest) twelve. Specifically: sub-part (a) asks when people started living in each mixed income development; sub-part (b), including all of its sub-sub-parts, asks for the number of different kinds of people living there; sub-parts (c), (d), and (e) ask for the identity of the building developers, owners, and managers; and sub-parts (f) and (g) ask whether and when drug testing was approved and implemented. Likewise, interrogatory number 5, which asks for a description of all drug testing protocols, should be treated as one interrogatory, and not (as you apparently suggest) eight. There are many further examples along these lines.

In any event, Rule 33(a)(1) allows an increase in the number of interrogatories by agreement of the parties. Mr. Peery respectfully requests that the CHA agree to answer the interrogatories in this set, without regard to the default cap in Rule 33(a)(1). This would be the most efficient way to disclose critical information, and thus to minimize the amount of time that all parties will spend on discovery. By the close of business on January 10, please advise me whether the CHA will agree to this request. If not, please suggest a time on Monday January 13 (other than noon through 2:00 p.m.) that we can consult by phone regarding this matter. As you know, in the absence of agreement of the parties, Rule 33(a)(1) allows an expansion of the number of interrogatories by order of the court.

If the CHA chooses to stand by its position that it will not answer more than 18 sub-parts of Mr. Peery's second set of interrogatories, Mr. Peery requests that the CHA answer the following 18 sub-parts by January 21: 1(f), 3(a) through 3(o), 8(a), and 8(d). By identifying these 18 sub-parts, Mr. Peery does not waive his right to seek the CHA's complete and timely answers to all of the interrogatories in this discovery request.

If you have any questions, please do not hesitate to call me at (312) 201-9740, extension 316.

Sincerely,

Adam

**From:** Mendenhall, Samuel [mailto:SMendenh@winston.com]
**Sent:** Tuesday, January 07, 2014 5:57 PM
**To:** Adam Schwartz
**Subject:** Peery v. CHA: Plaintiff's Second Set of Interrogatories to CHA

Adam,

Good evening.  I am writing you with respect to Plaintiff's Second Set of Interrogatories to CHA.  As you are aware, Rule 33(a)(1) of the Federal Rules of Civil Procedure provides, "Unless otherwise stipulated or ordered by the court, a party may serve on any other party **no more than 25 written interrogatories, including all discrete subparts**." (emphasis added).  On September 10, 2013, Plaintiff served Plaintiff's First Set of Interrogatories to CHA.  This set contained seven (7) interrogatories which the CHA answered in full.  Plaintiff's second set of interrogatories contains 62 interrogatories, including discrete subparts.  This brings the total interrogatories, including discrete subparts, served to date by Plaintiff on CHA to 69.  This far exceeds the 25 allowed under the rules.  As such, I am writing to inform you that CHA will answer the first 18 interrogatories, including subparts, which when added to the seven CHA previously answered, equals the maximum allowed under the rules.  If you would like for CHA to answer a different set of 18 interrogatories from the 62 Plaintiff served in the second set, please advise me of the same.

Thank you.


**Samuel Mendenhall**
**Partner**
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
D: +1 (312) 558-5755
F: +1 (312) 558-5700
Bio | VCard | Email | www.winston.com



The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# Exhibit 6

**Kaitlin Towner**

| | |
|---|---|
| **From:** | Karen Sheley |
| **Sent:** | Wednesday, January 15, 2014 12:37 PM |
| **To:** | smendenh@winston.com |
| **Cc:** | Adam Schwartz |
| **Subject:** | Peery v. CHA and Holsten--discovery conference |

Dear Sam,

Thank you for speaking with me this morning regarding discovery in this matter. I write to confirm our conversation.

First, I asked whether we could come to an agreement regarding the number of interrogatories. You informed me that, subject to the agreement of HMC, that CHA would be willing to have 25 interrogatories at each stage of the litigation. You also informed me that if we were willing to come back with a modified request, that CHA would consider it. However, with the current interrogatories, you confirmed that CHA would not agree to an increase in the number of interrogatories.

I thanked you for the suggestion of having additional interrogatories at each stage of the litigation. I also explained that the plaintiff needs the information requested in the interrogatories to make a presentation to Judge Coleman during the preliminary injunction hearing. We are all on a short discovery schedule and plaintiff believes it would be most efficient to have responses to the interrogatories. We believe that they will help inform the 30(b)(6) deposition. You further confirmed that CHA is not willing to answer all of the interrogatories.

Second, I informed you that we'll be asking HMC to depose Mr. Peery on either March 4, 2014 or March 18, 2014, rather than the noticed date of March 3. I further stated that I assumed that CHA also planned to depose Mr. Peery, and, if so, we wanted to give you notice of the dates because we will present him for one deposition.

Third, I asked whether CHA will present Sharnette Brown as your 30(b)(6) witness. You explained that right now it is the expectation, but if something changes you will let us know.

You also said you would continue to consider CHA's position on whether it will answer all the interrogatories. Thank you for that consideration. However, as I explained, plaintiff believes that we are now at an impasse on this issue because CHA is unwilling to answer the propounded interrogatories. You have stated that you would not answer them by email, and again in our conversation this morning. If CHA's position changes and it is willing to respond to the propounded interrogatories, please let me know by tomorrow, January 16, by noon.

Yours truly,


Karen Sheley
Staff Attorney
ACLU of Illinois

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.

# Exhibit 7

**Kaitlin Towner**

| | |
|---|---|
| **From:** | Mendenhall, Samuel <SMendenh@winston.com> |
| **Sent:** | Thursday, January 16, 2014 12:03 PM |
| **To:** | Karen Sheley |
| **Cc:** | Adam Schwartz |
| **Subject:** | RE: Peery v. CHA and Holsten--discovery conference |

Dear Karen,

Thank you for your email of yesterday regarding various issues in the Peery litigation. CHA responds as follows.

In the spirit of cooperation, CHA is willing to agree to one deposition for plaintiff Joseph Peery. HMC has noticed up this deposition for March 3, and you indicated you would like to switch it to March 4 or 18. Given that CHA's response brief is due on March 31, CHA can only agree to switch the date to March 4, as this will allow enough time for CHA to obtain and review the deposition transcript, conduct any necessary follow-up discovery, and prepare its response.

Regarding the deposition of Sharnette Brown, CHA's current expectation is that she will serve as its 30(b)(6) witness. If that expectation changes, I will let you know.

Lastly, with regard to plaintiff's second set of interrogatories to CHA, unfortunately it seems we are at an impasse. CHA cooperated fully with your earlier request for an expedited first set of interrogatories relating to the preliminary injunction. We answered each and every interrogatory fully. Plaintiff's second set of interrogatories contain at least 44 interrogatories and discrete subparts by plaintiff's own definition and case law. Thus, combined with the interrogatories previously served in the first set, plaintiff has served over 50 interrogatories upon CHA that relate to the preliminary injunction hearing only. Rule 33(a)(1) clearly limits the number of interrogatories for an entire case to 25 without leave of court or agreement of the parties. Unilaterally, without any discussion or leave of court, you decided to serve over 50 interrogatories upon CHA. In the spirit of cooperation, CHA offered to agree, subject to HMC's approval, to expand upon the 25-interrogatory limit, and allow 25 interrogatories at each stage of the litigation, e.g., preliminary injunction, class discovery, merits, etc. You flatly rejected this request and provided no counter-proposal.

You also stated yesterday that you are prepared to file a motion regarding the interrogatories fairly soon. Because the deadline for CHA to respond to the second set of interrogatories has not yet passed, and because there has been no expansion of the 25-interrogatory limit in Rule 33(a)(1), either by court order or by agreement of the parties, I can only assume that you are intending to file a motion for leave to expand the number of interrogatories permitted. As I also stated during our call, if you do intend to file any sort of motion, it would certainly be more efficient for the court and the parties to raise the issue before Magistrate Judge Keys in the

required joint statement of discovery issues, due on January 21, and the issue can be resolved at the scheduled conference with the magistrate on January 24.

In closing, it is very unfortunate that we could not resolve this issue despite CHA's offer to expand the limits of Rule 33(a)(1) by agreement. I remain open to trying to resolve this matter in advance of the January 24 due date and without imposing on the court.

Sam

---

**From:** Karen Sheley [mailto:ksheley@ACLU-il.org]
**Sent:** Wednesday, January 15, 2014 12:43 PM
**To:** Mendenhall, Samuel
**Cc:** Adam Schwartz
**Subject:** Peery v. CHA and Holsten--discovery conference

Dear Sam,

Thank you for speaking with me this morning regarding discovery in this matter. I write to confirm our conversation.

First, I asked whether we could come to an agreement regarding the number of interrogatories. You informed me that, subject to the agreement of HMC, that CHA would be willing to have 25 interrogatories at each stage of the litigation. You also informed me that if we were willing to come back with a modified request, that CHA would consider it. However, with the current interrogatories, you confirmed that CHA would not agree to an increase in the number of interrogatories.

I thanked you for the suggestion of having additional interrogatories at each stage of the litigation. I also explained that the plaintiff needs the information requested in the interrogatories to make a presentation to Judge Coleman during the preliminary injunction hearing. We are all on a short discovery schedule and plaintiff believes it would be most efficient to have responses to the interrogatories. We believe that they will help inform the 30(b)(6) deposition. You further confirmed that CHA is not willing to answer all of the interrogatories.

Second, I informed you that we'll be asking HMC to depose Mr. Peery on either March 4, 2014 or March 18, 2014, rather than the noticed date of March 3. I further stated that I assumed that CHA also planned to depose Mr. Peery, and, if so, we wanted to give you notice of the dates because we will present him for one deposition.

Third, I asked whether CHA will present Sharnette Brown as your 30(b)(6) witness. You explained that right now it is the expectation, but if something changes you will let us know.

You also said you would continue to consider CHA's position on whether it will answer all the interrogatories. Thank you for that consideration. However, as I explained, plaintiff believes that we are now at an impasse on this issue because CHA is unwilling to answer the propounded interrogatories. You have stated that you would not answer them by email, and again in our conversation this morning. If CHA's position changes and it is willing to respond to the propounded interrogatories, please let me know by tomorrow, January 16, by noon.

Yours truly,


Karen Sheley
Staff Attorney
ACLU of Illinois

This message and any files or text attached to it are intended only for the recipients named above, and contain information that may be confidential or privileged. If you are not an intended recipient, you must not read, copy, use or disclose this communication. Please also notify the sender by replying to this message, and then delete all copies of it from your system. Thank you.


The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. *********************************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.