# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH PEERY, on behalf of himself and all persons similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. 13-cv-05819 |
| ) | |
| v. ) | Judge Sharon J. Coleman |
| ) | |
| CHICAGO HOUSING AUTHORITY and HOLSTEN MANAGEMENT CORPORATION, ) ) ) | Magistrate Judge Arlander Keys |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO CHA**

Plaintiff, by his counsel, pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby serves upon defendant the Chicago Housing Authority this second set of document requests, to be answered in writing and delivered to the offices of counsel of record by January 21, 2014.

**DEFINITIONS AND INSTRUCTIONS**

1. As used in this discovery request, and as necessary to bring within its scope any information which otherwise might be outside of its scope:

    (a) The singular form of a word shall be interpreted to include the plural, and the plural to include singular.

    (b) "And" shall be interpreted to include "or," and "or" to include "and."

    (c) "Including" shall be interpreted as "including but not limited to."

    (d) "Plaintiff" shall mean Joseph Peery.

    (e) "Defendant" shall mean the Chicago Housing Authority and Holsten Management Corporation.

(f) "CHA" shall mean the Chicago Housing Authority.

(g) "HMC" shall mean Holsten Management Corporation.

(h) "Mixed-income development" shall mean (in the words of the CHA's "Plan Forward" report at page 30) a mixed-finance housing development that includes a combination of public housing and non-public housing units. As used herein, this term is limited to mixed-income developments within the City of Chicago.

(i) "Parkside" shall mean the mixed-income development known as Parkside of Old Town and located at 437 West Division Street.

(j) "Drug testing" shall mean suspicionless drug testing of adults as a condition of admission or continued occupancy at certain mixed-income developments.

(k) "Working group" shall mean (in the words of the CHA's "Moving to Work Annual Report" for FY 2008 at page 6) a group with "[t]he purpose . . . to combine and implement both the ideas and goals of several stakeholders into the revitalization of Chicago's public housing." As used herein, each mixed-income development has a working group.

(l) "Document" has the broadest possible meaning under Rule 34, and includes written or graphic matter of every kind or description, however produced or reproduced, whether draft or final, original or reproduction, and all electronically stored information and tangible things, including all writings, papers, e-mails, handwritten notes, calendar pads, appointment books, note pads, letters, memoranda, telegrams, intra-agency communications of any kind, financial statements, work papers, records, ledgers, minutes, correspondence, contracts, studies, charts, graphs, data sheets, bulletins, speeches, press releases, circulars,

pamphlets, notices, statements, maps, surveys, microfilm, tape and disk recordings, audio tape, video tape, computer records of any kind, videotape, periodicals, transcripts, pleadings, affidavits, and other tangible communications, wherever located. If a document has been prepared in several copies, or additional copies have been made, and the copies are not identical, whether by reason of subsequent modifications of the copy, by addition of notations or otherwise, each non-identical copy is a separate "document."

2. In responding to this discovery request, please furnish all available information, including information in the possession of defendant's subordinates, attorneys, or anyone acting under defendant's direction or control.

3. With respect to any document that defendant withholds on a claim of privilege, please provide a statement setting forth as to each document:

    (a)    the name of the author(s) of the document;

    (b)    the name of the recipient(s) of the document;

    (c)    the job title of each person named in (a) and (b) above;

    (d)    the date of the document;

    (e)    the title of the document;

    (f)    the type of document (e.g., memoranda, report, chart, etc.);

    (g)    a brief description of the nature and subject matter of the document; and

    (h)    the statute, rule, or decision which is claimed to give rise to the privilege.

## DOCUMENT REQUESTS

### I. The CHA's role

1. The following CHA documents:

    (a)    The current Admissions and Continued Occupancy Policy.

  (b)  The current standard three-party lease between the CHA, residents, and building managers.

  (c)  The current Relocation Rights Contract.

  (d)  The current Minimum Tenant Selection Plan for Mixed-Income/Mixed-Finance Communities.

  (e)  Plan Forward.

  (f)  Moving to Work Annual Report for FY 2008.

  (g)  Moving to Work Annual Report for FY 2012.

2. Any and all CHA policy and training documents that relate or refer to the adoption of site-specific tenant selection criteria at mixed-income developments.

3. For each and every mixed-income development with drug testing:

  (a)  Any and all agreements between the CHA and any development owner(s), developer(s), or manager(s) regarding the development, including any and all regulatory agreements, operating agreements, management agreements, master developer agreements, ground leases, and annual contribution contracts.

  (b)  The current tenant selection plan.

  (c)  The current standard lease.

  (d)  The public notice of this tenant selection plan and standard lease.

  (e)  Any and all public comments regarding this tenant selection plan and standard lease, including any response grid maintained by the CHA.

  (f)  The resolution adopted by the CHA board regarding this tenant selection plan and standard lease.

  (g) The CHA minutes of the CHA board meeting adopting this resolution.

  (h) Any and all working group documents that relate or refer to drug testing.

  (i) Any and all documents that relate or refer to any involvement of the Local Advisory Councils, including any LAC development corporations, in the creation of the drug testing.

  (j) Any and all other documents that relate or refer to the creation of the drug testing policy.

4. For each and every mixed-income development with drug testing, any and all documents that relate or refer to the role of the CHA in:

  (a) Creating the working group.

  (b) Selecting the developer.

  (c) Creating the redevelopment plan.

  (d) Obtaining HUD approval.

  (e) Spending the CHA's own funds.

  (f) Securing other funds and financing.

  (g) Demolishing old buildings.

  (h) Helping displaced tenants relocate.

  (i) Improving infrastructure, such as utilities, streets, and parks.

  (j) Completing real estate transactions.

  (k) Approving the new residences as fit for occupancy.

  (l) Referring the developers to displaced CHA tenants who want to live in the new development.

  (m) Owning the land below the development.

      (n)      Ensuring that the development is operated in compliance with applicable federal laws.

      (o)      Creating site-specific tenant selection criteria for the development.

      (p)      Any and all other aspects of the development.

5.      Any and all documents exchanged between the CHA and the U.S. Department of Housing and Urban Development relating or referring to drug testing at any mixed-income development.

6.      Each and every document that relates or refers to the CHA's contention (in its answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3) that "CHA acquiesced in the private developers and resident desires for drug screening in order to promote investment in and acceptance of Parkside[.]"

## II.    The drug testing

7.      For each and every mixed-income development with drug testing, any and all documents that relate or refer to the manner that drug testing is conducted, including:

      (a)      Any and all policy or training documents.

      (b)      Any and all agreements with people or organizations who conduct the drug testing.

      (c)      Any and all documents that relate or refer to:

            (i)      Who is and is not subject to drug testing.

            (ii)      Where the specimen is gathered, and by whom.

            (iii)      Where the specimen is analyzed, and by whom.

            (iv)      What drugs are subject to testing.

            (v)      All persons notified of a positive result.

  (vi) All consequences of a positive result.

  (vii) All measures to ensure confidentiality of the tested persons.

  (viii) All protocols for people at risk of false positives due to their use of lawful medicine, including: whether such people must disclose their use of such medicine; and if so: to whom they disclose it; how it is disclosed; how that information is used; and how that information is confidentially maintained.

  (ix) Notice to the CHA of any aspect of the manner that drug testing was conducted, including: objections to drug testing by persons subject to drug testing; the results of drug testing; and what happens to persons who test positive.

### III. The reasons for the drug testing

8. Each and every document that relates or refers to the CHA's contention that "special needs" advanced by the drug testing include:

  (a) "[P]ublic safety at Parkside, given the history of safety problems in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

  (b) "[P]romotion of a drug-free Parkside, given the history of drug problems in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

  (c) "[P]rotection of the youth residing at Parkside, given the history of harm to youth in the surrounding community[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

    (d)    "[T]he special and compelling social, economic, and community development goals served by the historic and unprecedented transformation of Cabrini Green[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 3.

9.    Each and every document that relates or refers to the CHA's contention that:

    (a)    There is "developer and resident demand for tenants who receive CHA benefits to abide by generally-applicable tenancy requirements, including drug screening, as a condition of investing in Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 4.

    (b)    There is a "lack of drug-related issues at Parkside as compared to the surrounding community before Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 5.

    (c)    Drug testing has advanced a "lack of drug-related issues at Parkside as compared to the surrounding community before Parkside[.]" *See* CHA's answers of October 25, 2013, to the ACLU's first set of interrogatories, at page 5.

10.    Each and every document, beyond those responsive to requests 8 and 9 above, that the CHA asserts relates or refers to the existence of any special need for drug testing at the mixed-income developments, or shows that drug testing advances any special need.

## IV. Miscellaneous

11.    Any and all documents that relate or refer to Joseph Peery.

12.    Any and all documents that the CHA relied upon in answering plaintiff's

8

interrogatories and admission requests served simultaneously with these document requests, or that the CHA identified in those answers.

DATED: December 20, 2013

Respectfully submitted,

*/s/ Adam Schwartz*

*One of the Plaintiff's Attorneys*

RICHARD J. O'BRIEN
ERIC T. SCHMITT
Sidley Austin LLP
One South Dearborn St.
Chicago, IL 60603
(312) 853-7000

ADAM SCHWARTZ
HARVEY GROSSMAN
KAREN SHELEY
LINDSAY MILLER
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave. Suite 2300
Chicago, IL 60601
(312) 201-9740

9

## CERTIFICATE OF SERVICE

I, Adam Schwartz, an attorney, hereby certify upon oath, I served to the counsel of record listed below a true and correct copy of **PLAINTIFF'S SECOND SET OF DOCUMENT REQUESTS TO CHA** via messenger and email on December 20, 2013.

Samuel Mendenhall
Kimball Anderson
WINSTON & STRAWN
35 West Wacker Drive
Chicago IL 60601
smendenhall@winston.com
kanderson@winston.com

Elizabeth Papez
WINSTON & STRAWN
1700 K Street, NW
Washington, DC 20006
epapez@winston.com

Thomas E. Johnson
JOHNSON JONES SNELLING GILBERT & DAVIS
36 South Wabash Avenue, Suite 1310
Chicago, IL 60603
tjohnson@jjsgd.com

Samantha Liskow
LOEVY & LOEVY
312 N. May St., Ste. 100
Chicago, IL 60607
samantha@loevy.com

Stephanie Jones
FIGLIULO & SILVERMAN, P.C.
10 S. LaSalle Street Suite 3600
Chicago, IL 60603
sjones@fslegal.com

Adam Schwartz